310-0887, estate of Richard F. Wicks, deceased, account of H. Hester Thorne v. Thelma Virginia Wicks, and the lead by Roger Holtzgram. Mr. Thorne. Thank you. Please report, Mr. Holtzgram. This is a rather simple case, and if you've read the briefs, the issues are not that complicated. The facts of the case are that Mr. Wicks, who was divorced in Iowa in 1978, died 31 years later in Illinois, in pure Illinois, in July of 2009. In his Iowa divorce, the language of the decree stated that he was to pay his wife $1,000 a month until she remarried or died. And then there was also a provision in the Iowa decree that that was a $30,000 policy to secure, if you will, that obligation. I think there are three main issues that I'd like to just go over very quickly and bring to the Court's attention. The first is obvious, and that is should alimony continue after the death of the husband in this case. And it's absolutely clear, both in Iowa and, of course, in Illinois, that the general rule is that it ceases on death unless there's a stipulation or agreement between the parties that is clear and unambiguous that would allow the Court to order the payments to continue. There are basically only two cases, I believe there are only two cases from the Iowa cases that support that position, both of them. The Yost case, which is a 1946 case, and the Roberts case, which is a 1964 case, said in effect that, yeah, alimony terminates upon death, but in those cases we're going to interpret that the parties had some type of an agreement that it was to continue. Every other case after those cases, Iowa case, have stood for the proposition that basically the alimony terminates and you must have a clear and unambiguous agreement between the parties. It's interesting to note that the two cases cited in the brief, the Klinghammer and the Schnorr case, had the exact same language as our case. It used to be alimony until she dies or remarries. And both of those Iowa cases said that's not a clear, unambiguous statement that it's to continue. And in the Roberts case, it's also to bring out that the dissent in that case, even in 1964, made, I think, a pretty profound statement. And what the justice said was when you say that the husband is to pay alimony until the wife remarries or dies, the justice said that's only a statement of law. That's a provision of a statement of law. And how you can take that and bootstrap the theory that these payments are to continue, I don't think is correct. And the dissenting opinion felt that way, too. And basically every other Iowa case after that has also said the same thing. And if you look at the cases, one of the problems that you have is some of the cases, I think the Yost case, even the Roberts case, talk about an agreement or a stipulation, but they don't provide that language. To me, if you're going to have an unambiguous provision that it's to continue after the death, you say Mr. Smith is to pay alimony to Mrs. Smith until she dies or remarries, and further these payments will be a lien or will be a liability against Mr. Smith's estate or whatever. You have to have some clarifying language. And I think that's what Klinghammer and Schnoor said. And the Jones case, which decided, said the same thing. You must clearly provide language that the court can see that there was an intent of the parties that it would be provided after the husband passed away. Counsel, can I interject? When I read your brief, you don't mention that the court decided this issue of slavery judgment. Okay. And you didn't appear in court on the date set for hearing. There was a mix-up. That's absolutely right because I was in court. So couldn't the court have just entered an order by default because you didn't appear? I believe the court has that power. And then you didn't do a motion to reconsider after you found out that a mix-up had occurred. And so what we're hearing you say today, I don't think the trial court heard. I would agree. Yeah, I was not present during the arguments because of a mix-up in my schedule and I was in court. My fault. Okay. Getting back to that first point, that the language must be clear, the Lundahl case, which reviewed Iowa law, which is an Illinois case, said that any ambiguities should be resolved against the claimant. So I think there's a wealth of cases coming out of Iowa that all stand for the same proposition, that alimony terminates. If you're going to argue that it's to continue past that time, you have to have a stipulation, an agreement that's unambiguous and clear. The language in this case, which has been reviewed by the Clingham and the Schnorr case, the same thing, is just a statement of law. Mr. Smith pays, in this case Mr. Wicks, pays alimony until the wife remarries or dies. That's not an agreement or stipulation where the intent of the parties are shown to go on beyond that. The second point, I would argue that assuming the second argument they used, the corporate buying it, while we think that alimony should continue, is that the cases have said even if it would continue, the parties put in specifically this $30,000 life insurance policy as security for the alimony payments. In the Warner case and the Serrano case, Iowa cases obviously, both stand for the proposition that that's the limit of the liability that the estate should be bound by, is the amount of the insurance policy that was mentioned in the judgment. And I think, I'm getting confused, one of the cases involved a $200,000 insurance policy and the wife was trying to get the whole policy and the court said no, no, you can't do that. He was to pay $300,000 a month and I think it was a set period, maybe for 10 years. He died in the seventh year, you've got so much money coming. Here's your check for $20,000 and $180,000 goes to his estate. So it's not actually against the whole thing, but it's his security to pay the alimony. So are you conceding then that this $30,000 would continue to pay those payments? No, I'm not conceding that, Judge. What I'm saying that for the sake of argument, if you say, well, it should continue, at the very most would be the $30,000 limit. And why wouldn't it? What is your argument against that? I'm sorry. Why wouldn't it guarantee the $30,000 over 30 months or whatever it was to her? Well, I think it goes back to some of the language in the cases that say, again, if you're going to continue it beyond death, you have to have a clear agreement and stipulation between the parties. And without that... I mean just the insurance payment. Pardon? The life insurance payment. Right. Well, you wouldn't even get, if you accept the first proposition, you don't even get the life insurance. But if you do get beyond that first argument and say, well, I think the payment should continue, then I think the Warner and the Serrano cases said that all that you can get would be the $30,000. Cap insurance. Yes. Okay. The third point I would mention is all of these cases talk about equities. And, of course, divorce court is a court of equity. And the Devler case and the Weinberger case speak to a court looking at all of the facts to determine the equities. And it goes back, I guess, to the fact that this was decided on summary judgment. I think there's an argument that the court, since there were some possible disputes, or the issue of the equities, anyway, that's not a possible dispute, but the court should have had maybe an evidentiary hearing to look at the equities to determine, like in any case, when the parties are alive, if you're talking about modification of maintenance or termination, the court takes evidence to find out what's the status of the parties and is the wife that should just win the California lotto and has $10 million and the husband is now bankrupt or whatever, but you look at the total equities. So I think there's an argument for that position also. And the last thing that I would bring up, and it's not really a point, it's something I thought of last night about 10.30 when I was going over this in my mind, is that maybe we don't even need to look at Iowa law. You know, what we're talking about is a debt that was incurred in Iowa that was filed as a claim against an Illinois case. And maybe it's just Illinois law that should dictate the decision in this case. The Iowa judgment has never been registered in Illinois. It just filed a claim and said you owe us some money in Iowa. The claimant has the choice of venue. They could have filed something in a divorce court in Iowa and litigated it over there, but they've come to Illinois and they say you owe us money. And I'm not so sure that that can't be decided by the Illinois courts with Illinois law. How do you think that would result? Do you think that strengthens or weakens your case? Oh, I think it strengthens my case. I think, again, the Lumbauld case, which is an Illinois case, which goes into this whole issue extensively, comes to the conclusion that I think all the Illinois courts of recent years have taken it. It terminates a debt. Maintenance terminates a debt. And to me, it's probably not a good analogy since I just thought of this at 1030, but if this was 40 years ago and we had an estate like this and a Las Vegas casino had filed a claim based on a gambling debt, would our Illinois courts go back and try to interpret Nevada law? Or would they simply say, let's look at Illinois law and enforce a gambling debt? What you're saying is that Illinois public policy would militate against this. Yes. Exactly. I didn't think it were public policy, but that's absolutely right, Your Honor. And it also, I think, makes sense for judicial economy because to me it puts a tremendous burden on all of our courts, our circuit courts, our appellate courts, to expect you to interpret Iowa law, Texas law, California law, whatever happens to be coming through. So I think public policy and the court's work would, it's not as, if let me put it this way, I don't believe it's an entirely spacious argument. I'll take two minutes. Was that argument presented in the trial court? I'm sorry. Was that argument presented in the trial court? No, Your Honor, it wasn't. I thought of it last night at 1030. But I think it has some valid merit. Any other questions? Thank you very much. Thank you, Mr. Fuller. And Mr. Holcrest. May it please the Court, Mr. Fuller. My name is Roger Holcrest. I represent the appellee, Thelma Virginia Wicks, whose claim that was the subject of our motion, a motion for summary judgment at the trial court, which the trial court granted and has resulted in the appeal to this court. The divorce decree, as Mr. Fuller indicated, was entered in the state of Iowa. And the law of Iowa, we believe, controls the determination of this case. Despite the comments at the end of Mr. Fuller's argument, I believe that the Iowa law would apply. As I think it would apply, the law of the situs where the divorce took place, I believe, necessarily would have to apply, regardless of where the parties may subsequently move in the event of a state claim, simply because at the time the decree is entered, it's the law of that state that governs and determines the rights of the parties. And that's when it's fixed, and it's that law that should continue to apply. Mr. Fuller was correct, I believe, in saying that the case is relatively simple and straightforward, and he indicates that there are only two cases that tend to support the position that I'm advocating. Those two cases happen to be the two Iowa Supreme Court cases, Yoss and Roberts. Yoss is the leading case, and Yoss sets forth the applicable rule, and it states as follows. The general rule is that the alimony payments would terminate the death in the absence of a provision in the decree which requires the payments to continue after the death. In Yoss, what that consisted of was a stipulation entered into by the parties that the payments would continue until the, in that case, the wife remarried or died. The court in Yoss incorporated that stipulation and provided also that the alimony would continue until the wife remarries or dies. That's exactly what happened here, and that's why Yoss controls this case. Now, there were numerous cases cited in the estate's brief, and those cases, I believe with one exception, were simply cases of the Iowa appellate courts being asked to interpret, not interpret, being asked to review de novo the terms of a decree entered by the Iowa Divorce Court. Weren't they, I mean, I think your first comment was also applicable. I mean, weren't they interpreting Yoss? Weren't they really saying, weren't they taking Yoss and kind of interpreting it? Yes, I think they were actually properly applying the concept of Yoss. I think they recognized that Yoss is correct. But what they did in those cases, when the appellate courts of Iowa served as a de novo review of the decree, they take into consideration all the factors that the trial court took into consideration, the relative income levels of the parties, the period of time that they were married, children, all of the variety of things that the divorce court took into consideration. Those appellate courts in Iowa were taken into consideration, and based on the factors in those cases, many times they decided that continuation of alimony after the death of one of the parties is inappropriate, based on the facts of those cases. And those were not cases where the parties had entered into a stipulation. Those were cases where one of the parties didn't like what the result was in terms of alimony, so they appealed it. And the appellate court then made the determination that, yeah, you're right. It's not appropriate for the alimony to continue under these set of facts. But that's not what we're about here today. This is a case where, in 1978, the decree was entered. Neither party appealed it. The parties had entered into a stipulation as to alimony, stating that the $1,000 per month is continuing until such time as the claimant may remarry or die, whichever occurs first. Yoss indicates that that is sufficient to show the intent. And it was not only in the stipulation, but it was also in the decree that was entered approving the stipulation. At the trial level, the estate did not dispute that the divorce occurred in Iowa, that the parties entered into a stipulation that provided for the alimony to continue until the claimant died or remarried. The decree approved it. The decree contained the same provision that it would continue, did not contest that the claimant has not remarried, and did not contest that no monthly payments have been made since the decedent died. Those are all the factors that, in our position, dictate the result here. Now, I've discussed some already, the Iowa appellate court decisions, when they were acting as a de novo review of the decrees entered in some of those divorce cases. I distinguish those cases in my brief. And, again, they are distinguished, again, on the basis that either one of the following. Which we say is critical, that they were reviewing de novo the provisions of the decree, including the provisions of alimony for which there was no agreement. Now, I will acknowledge that there was one Iowa Supreme Court case cited by the estate. And I want to draw the court's attention to this simply because I don't want the court to believe that the only cases that I'm saying that they cited were appellate court decisions. But the Mullen case was a case admittedly where there had been a stipulation entered into that alimony would be paid and it would continue after death, or until the wife remarried or died. In that case, though, the Iowa Supreme Court ruled that the alimony did not continue. But it's very important to recognize why it ruled it did not continue. It did not continue because there were other provisions in the divorce decree and in the settlement that led the court to conclude that the parties did not intend for the alimony to continue. Is that a question of fact or a question of law? I believe it's a question of law. I believe it's a question of law. See, my concern here is that the trial court made a determination based on the undisputed language of this judgment, the solution judgment, that respondent would pay or petitioner would pay until respondent remarried or died. I think the trial court found as a matter of fact that that is an intent to continue until she dies. And if you say it's a question of law, then we look at that de novo. If it's a question of fact, then I'm troubled by the fact that there were no arguments presented to the court and no motion to reconsider. And tell me if I'm completely off base here. You can. I would never suggest that you're completely off base. If I disagree with you, I'll do so in a nice way. All right. Thank you. I believe the trial court made the determination that the parties intended by virtue of the language utilized in the stipulation and in the decree that the alimony was to continue until she remarried or died. To me, that's a question of fact, and Iowa law allows them to do that. Yes. That's a question of law. Iowa law, the Yaas case clearly states that the parties can stipulate as to alimony how long it would run. And if that stipulation is approved in the decree, which it was here, and that language is also added in the decree, which it was here, then that on the Yaas, the alimony would continue until one of those two things happens. Either the person dies or remarries. Under Illinois law, it would end when he died. Well, there is some old Illinois Supreme Court authority which suggests that the potential exists for the alimony to continue. I will tell you that from my client's perspective, we believe Iowa law applies, and it's more favorable to my client. But if Illinois law applies, I would also be making an argument based on some rather old Illinois Supreme Court authority. But getting back to my question, you don't view it as a determination of fact that the judge read the dissolution language, considered the fact that there was a life insurance policy to secure the judgment, and in combination of those circumstances found an intent that the alimony should continue beyond his life. Well, I believe the judge ruled that the intent of the parties and the court, which incorporated provisions of the stipulation, was that it would continue. Yeah, I just don't think intent is a question of law, but we'll debate that later as a panel. I do want to – and by the way, I want to go back to my Illinois law comment. In the state's brief, reference was made to the Yaas case as being ancient. In 1946, I did not consider it ancient, and I don't think it's been questioned. Only people of our age would say that. Well, I was going to say that it was two years before I was born, and I don't consider myself an agent. And also in the state's brief, after the exhaustive and I believe effective way that I sought to distinguish the cases relied upon by the plaintiff, that I was splitting hairs. I don't think I was splitting hairs. I think I really focused on the key elements of why those cases are not distinguishable. And despite the opportunity for briefing before the trial court on the motion for serving judgment, as well as here, there's really no authority that I have seen or that's been presented that would suggest that Yaas is not the law that should apply to this case. I do also want to focus very briefly in the last couple of minutes here on the concept of the $30,000 policy. The stipulation and decree both said it was to secure the obligations, not to substitute for the obligations. The Iowa cases, including two that have been cited by the state, make it clear that when those provisions are found in a decree, when it speaks in terms of securing, those are not intended as a substitute. And in fact, the ex-wife in all three of the cases, it's the ex-wife, would not be entitled to the lump sum, but would only be entitled to that portion of the total amount that would be equivalent to the continuation of the alimony payments. In one case, the lump sum was $90,000. She was entitled to $300 a month. That's what she got. In another case, the lump sum was $200,000. Under that decree, she only had three months to go at $3,000 a month, so the court said she got $9,000. We're not contending that we're entitled to the lump sum. We're contending that we're entitled to $1,000 a month until she marries or dies, and we ask you to affirm the action of the trial court. Is she still alive? She's still alive. What you're saying is- I'm sorry. How old is she? How old is she? She's in her mid-70s. What you're saying is that the indemnity amount is not a limitation on the obligation. That's correct. That's correct. And I would say if she had died one month after her former husband died, she would have been entitled to $1,000, not $30,000. But if she lives 31 months, she's entitled to 31, not 30. Thank you. Any other questions? Thank you, Mr. Rothrath. Mr. Fuller, are you rebuttal? Just briefly. I just wanted to clarify one thing, because we've both talked about the language of the decree and the concept of the stipulation and agreement the parties entered into. In this particular case, they're absolutely identical. There's no difference. The stipulation, which is-the judgment just repeats the stipulation word for word when it comes to the issue of alimony. It just says continue to pay interest, remarry if you're dying. So there's no additional language that makes it anything more than just, as the Justice in the Roberts case had a statement of the proposition of law. And that same language was interpreted by the Iowa courts in cases after that and said that's not enough, that that language standing on its own is not going to be enough to get you past the death of the husband. So I think it's important because you could infer that there was some kind of big three-page stipulation about the alimony, but it's one sentence. It's shall continue until she remarries or dies. And that language, as I mentioned earlier in other cases, the Iowa courts said that's not enough. It's not enough. All right. Thank you, Mr. Fuller. Thank you both for your argument today. We will take this matter under advisement and get back to you with a written disposition within a short day. And we'll now take a recess today until tomorrow morning at 9 o'clock.